UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JAYLEN MARTINEZ-LOPEZ,    )
    )
    Plaintiff,    )
    v.    )    CIVIL ACTION
    )    NO. 13-10996-JGD
CAROLYN W. COLVIN, Acting )
Commissioner of the Social Security    )
Administration,    )
    )
    Defendant.    )

## MEMORANDUM OF DECISION AND
## ORDER ON CROSS-MOTIONS REGARDING
## DENIAL OF SOCIAL SECURITY BENEFITS

October 22, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, Jaylen Martinez-Lopez ("Martinez-Lopez"), has brought this action

pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§

405(g) and 1383(c)(3), in order to challenge the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying her claims for Social Security

Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  The

matter is before the court on the "Plaintiff's Motion for Order Reversing the

Commissioner's Decision" (Docket No. 13), by which the plaintiff is seeking an order

reversing the Commissioner's decision and remanding the matter back to the Social

Security Administration for further consideration.  It is also before the court on the

"Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 26), by which the Commissioner is seeking an order upholding her decision to deny the plaintiff's claims for benefits. At issue is whether the Administrative Law Judge ("ALJ"), in reaching his conclusion that Martinez-Lopez was not disabled, failed to apply the appropriate analysis in connection with his determination that her physical impairments were not "severe." Also at issue is whether the ALJ appropriately weighed the available opinion evidence regarding the extent of the plaintiff's mental limitations. For all the reasons described below, this court finds that the ALJ's decision was supported by substantial evidence. Therefore, the plaintiff's motion to reverse and remand is DENIED, and the defendant's motion to affirm is ALLOWED.

## II.  <u>STATEMENT OF FACTS</u>[1]

Martinez-Lopez was born on March 15, 1984, and was 25 years old at the time she applied for Social Security benefits. (Tr. 67, 812). Although she left high school shortly before completing her senior year, Martinez-Lopez was able to earn a GED in 2002. (Tr. 96, 833-34). She also has held a variety of jobs, including jobs as a waitress, a cashier at a grocery store, a car rental agent, a customer service representative, and a gate agent for an airline company. (Tr. 97, 834-44). However, the plaintiff left her last job as a gate agent in April 2009, after her obstetrician advised her to stay out of work due to an outbreak of scabies among employees at the airport. (Tr. 96, 235). At that time,

---

[1] References to pages in the transcript of the record proceedings shall be cited as "Tr. __." The ALJ's Decision shall be cited as "Dec." and can be found beginning at Tr. 14.

Martinez-Lopez was pregnant with her third child and was experiencing a number of complications with the pregnancy.  (Tr. 235; <u>see</u> <u>also</u> Tr. 813).  Following the delivery of her child in May 2009, Martinez-Lopez suffered severe post-partum depression and anxiety for which she obtained psychiatric treatment.  (Tr. 233-35).  She claims that her mental impairments, as well as a number of physical impairments, have prevented her from returning to work or from carrying out any alternative type of gainful employment.  (Tr. 845).

## <u>Procedural History</u>

On January 14, 2010, the plaintiff filed applications for SSI and SSDI, claiming that she had been unable to work since July 15, 2009 due to post-partum psychosis.  (Tr. 67-69, 95, 812-819).  She later alleged disability due to depression, anxiety, asthma, arthritis, and obesity as well.  (<u>See</u> Tr. 106, 845).  Her applications were denied initially in March 2010, and upon reconsideration in September 2010.  (Tr. 820-23, 824-27; <u>see</u> <u>also</u> Dec. 1; Tr. 14).  The plaintiff then requested and was granted a hearing before an ALJ, which took place on October 18, 2011.  (Tr. 66, 828-67).  Martinez-Lopez, who was represented by counsel, appeared and testified at the hearing.  (Tr. 828, 833-60).  The ALJ also elicited testimony from a Vocational Expert ("VE"), who described the plaintiff's vocational background based on her past work experience, and responded to hypothetical questions designed to determine whether jobs exist in the national and regional economies for an individual with the same age, educational background, work experience, and residual functional capacity ("RFC") as Martinez-Lopez.  (Tr. 861-65).

On January 31, 2012, the ALJ issued a decision denying the plaintiff's applications for benefits. (Tr. 11-33). Martinez-Lopez then filed a request for review of the ALJ's decision by the Social Security Appeals Council. (Tr. 9-10). On February 21, 2013, the Appeals Council denied the plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner for purposes of review. (Tr. 5-7). Accordingly, the plaintiff has exhausted all of her administrative remedies, and the case is ripe for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## The ALJ's Decision

The ALJ concluded that from July 15, 2009 through the date of his decision on January 31, 2012, Martinez-Lopez "ha[d] not been under a disability within the meaning of the Social Security Act[,]" which defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." (Dec. 1; Tr. 14). See also 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is no dispute that the ALJ, in reaching his decision that Martinez-Lopez was not disabled, performed the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520 and 416.920. The procedure resulted in the following analysis, which is detailed further in the ALJ's "Findings of Fact and Conclusions of Law." (See Dec. 3-19; Tr. 16-32).

The first inquiry in the five-step evaluation process is whether the claimant is "engaged in substantial gainful work activity[.]" Seavey v. Barnhart, 276 F.3d 1, 5 (1st

Cir. 2001).  If so, the claimant is automatically considered not disabled and the application for benefits is denied.  See id.  In this case, the ALJ found that Martinez-Lopez had not engaged in such activity since July 15, 2009, the alleged onset date of her disability.  (Dec. Finding #2; Tr. 16).  Therefore, the ALJ proceeded to the second step in the sequential analysis.

The second inquiry is whether the claimant has a "severe impairment," meaning an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is deemed not to be disabled and the application for benefits is denied.  See Seavey, 276 F.3d at 5.  Here, the ALJ determined that Martinez-Lopez suffered from two severe mental impairments – depression and anxiety – but that her asthma, arthritis and obesity were not severe.  (Dec. Finding #3; Tr. 16).  The plaintiff challenges this conclusion, and contends that the ALJ erred in evaluating the severity of her physical conditions.

In connection with his finding at step two, the ALJ provided a detailed description of the medical evidence relating to the plaintiff's physical conditions.  (Dec. 3-7; Tr. 16-20).  In particular, the ALJ reviewed the medical records relating to the plaintiff's history of arthritis and asthma, as well as medical records reflecting the plaintiff's complaints about her weight.  (Id.).  He also considered the opinion of a State agency physician, R.C. Brown, M.D., who reviewed the plaintiff's medical records and determined that her physical impairments were not severe.  (Dec. 4; Tr. 17).  In addition, the ALJ considered

the plaintiff's testimony regarding the nature and extent of her pain and other symptoms, including the impact of her symptoms on her ability to perform day-to-day activities. (Dec. 5; Tr. 18). Based on his review of the evidence, the ALJ determined that there was no support for a finding that the symptoms caused by the plaintiff's asthma "are of such duration or intensity to interfere with her ability to perform work activities." (Dec. 6; Tr. 19). Accordingly, he determined that her asthma was not severe. (Id.). With respect to the plaintiff's arthritis and obesity, the ALJ rendered the following conclusion:

> The medical evidence as a whole does not support a finding that the claimant suffers from symptoms and/or limitations due to arthritis or obesity that are not associated with pregnancy or not controlled with medication when she is not pregnant. I find that the claimant's arthritis and obesity are only severe impairments while she is pregnant, and as such are not expected to last 12 months (20 CFR 404.1520(a)(4)(ii) and 416.920(a)(4)(ii)). I give weight to the assessment of Dr. Brown at Exhibit 10F. No treating source has identified greater physical limitation.

(Dec. 7; Tr. 20). Therefore, he determined that those impairments too were not severe for purposes of the disability analysis. (Dec. 3; Tr. 16). For the reasons described below, this court finds that there is substantial support for these findings.

Because the ALJ determined that Martinez-Lopez suffered from severe mental impairments, he proceeded to step three in the sequential analysis. The third inquiry is whether the claimant has an impairment equivalent to a specific list of impairments contained in Appendix 1 of the Social Security regulations. See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At this step, the ALJ concluded that the plaintiff's impairments, either alone or in combination, did not meet or medically

equal any of the listed impairments.  (Dec. Finding #4; Tr. 20).  Accordingly, his analysis continued.

The fourth inquiry asks whether "the applicant's 'residual functional capacity' is such that he or she can still perform past relevant work[.]"  Seavey, 276 F.3d at 5.  In the instant case, the ALJ determined as follows with respect to the plaintiff's RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand and remember simple instructions; she is able to concentrate for 2-hour periods over an 8-hour workday on simple tasks; she is able to interact appropriately with co-workers and supervisors, but should avoid work which requires frequent contact with the general public; and she is able to adapt to changes in the work setting.

(Dec. Finding #5; Tr. 22).

In reaching this conclusion, the ALJ considered the plaintiff's symptoms and the extent to which her symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence[.]"  (Dec. 9; Tr. 22).  He also considered opinions that had been expressed by several treating and non-treating sources.  (Id.).  Martinez-Lopez contends that the ALJ improperly weighed the opinions of an advising State agency psychologist, Carol McKenna, Ph.D., and the plaintiff's treating psychiatrist, Tony Lim, M.D.  For the reasons discussed below, this court disagrees and finds that the ALJ's handling of the opinion evidence was proper.

After explaining the basis for his RFC determination, the ALJ concluded that Martinez-Lopez was unable to perform her past relevant work as a retail cashier, custo-

mer service agent, automobile rental agent or gate agent.  (Dec. 18; Tr. 31).  Consequently, he reached the fifth and last step in the sequential analysis.

The fifth inquiry is whether, given the claimant's RFC, education, work experience and age, the claimant is capable of performing other work.  See Seavey, 276 F.3d at 5; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).  At step five, the Commissioner has the burden "of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey, 276 F.3d at 5.  Here, the ALJ relied on the VE's testimony to conclude that Martinez-Lopez was capable of performing work that exists in significant numbers in the national economy.  (Dec. 18-19; Tr. 31-32).  Therefore, the ALJ found that she was not disabled under the Social Security Act.  (Dec. 20; Tr. 33).

Additional factual details relevant to this court's analysis are described below where appropriate.

### III.  ANALYSIS

#### A.  Standard of Review

By her complaint, Martinez-Lopez is seeking judicial review of the Commissioner's "final decision" pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act").  Section 205(g) provides in relevant part as follows:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ....  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment

> affirming, modifying, or reversing the decision of the Commissioner
> of Social Security, with or without remanding the cause for a re-
> hearing. The findings of the Commissioner of Social Security as to
> any fact, if supported by *substantial evidence*, shall be conclusive ....

42 U.S.C. § 405(g) (emphasis added). The Supreme Court has defined "substantial

evidence" to mean "more than a mere scintilla. It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting

Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126

(1938)); accord Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st

Cir. 1991).

     As the First Circuit has explained,

> In reviewing the record for substantial evidence, we are to keep in
> mind that "issues of credibility and the drawing of permissible
> inference from evidentiary facts are the prime responsibility of the
> [Commissioner]." The [Commissioner] may (and, under his regula-
> tions, must) take medical evidence. But the resolution of conflicts in
> the evidence and the determination of the ultimate question of
> disability is for him, not for the doctors or for the courts. We must
> uphold the [Commissioner's] findings in this case if a reasonable
> mind, reviewing the record as a whole, could accept it as adequate to
> support his conclusion.

Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981) (quoting

Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

Therefore, "the court's function is a narrow one limited to determining whether there is

substantial evidence to support the [Commissioner's] findings and whether the decision

conformed to statutory requirements." Geoffroy v. Sec'y of Health & Human Servs., 663

F.2d 315, 319 (1st Cir. 1981). The Commissioner's decision must be affirmed, "even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

"Even in the presence of substantial evidence, however, the Court may review conclusions of law, and invalidate findings of fact that are 'derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts[.]'" Musto v. Halter, 135 F. Supp. 2d 220, 225 (D. Mass. 2001) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)) (internal citations omitted). "Thus, if the ALJ made a legal or factual error, the court may reverse or remand such decision to consider new, material evidence or to apply the correct legal standard." Ross v. Astrue, Civil Action No. 09-11392-DJC, 2011 WL 2110217, at *2 (D. Mass. May 26, 2011) (internal citation omitted).

### B. Failure to Find a Severe Physical Impairment

The plaintiff argues that the Commissioner's decision to deny her claim for bene-fits must be reversed and remanded because the ALJ erred at step two of the disability analysis when he found that her asthma, arthritis and obesity were not severe impair-ments. Specifically, Martinez-Lopez contends that the ALJ failed to comply with Social Security Ruling ("SSR") 85-28, which provides guidance for finding that a claimant's impairments do not meet the severity requirements of the Social Security regulations. (Pl. Mem. (Docket No. 16) at 14-16). She further contends that Dr. Brown's assessment that her physical impairments were not severe was flawed, and that the ALJ's decision to

credit Dr. Brown's opinion was improper. (Pl. Reply Mem. (Docket No. 30) at 2-3). For

the reasons that follow, this court finds that the ALJ's analysis at step two was appro-

priate, and does not warrant a remand to the Social Security Administration.

## SSR 85-28

SSR 85-28 was issued in 1985 in order "[t]o clarify the policy for determining

when a person's impairment(s) may be found 'not severe[.]'" SSR 85-28, 1985 WL

56856, at *1 (S.S.A. 1985). Pursuant to the ruling,

> [a]n impairment or combination of impairments is found "not
> severe" and a finding of "not disabled" is made at this step when
> medical evidence establishes only a slight abnormality or a
> combination of slight abnormalities which would have no more than
> a minimal effect on an individual's ability to work even if the
> individual's age, education, or work experience were specifically
> considered (i.e., the person's impairment(s) has no more than a
> minimal effect on his or her physical or mental ability(ies) to
> perform basic work activities).

Id. at *3. Therefore, "[t]he severity requirement cannot be satisfied when medical

evidence shows that the person has the ability to perform basic work activities[.]" Id.

See also 20 C.F.R. §§ 404.1521(a), 416.921(a) ("An impairment or combination of

impairments is not severe if it does not significantly limit your physical or mental ability

to do basic work activities").

## Evidence Regarding Plaintiff's Physical Impairments

The record does not support the plaintiff's claim that the ALJ failed to comply

with the standard described in SSR 85-28. At step two, the ALJ conducted a detailed

review of the medical evidence pertaining to Martinez-Lopez's physical conditions. With

respect to the plaintiff's asthma, the ALJ found that the plaintiff's records described the condition as mild, requiring only rare use of an albuterol inhaler. (Dec. 6; Tr. 19). He also found no evidence that Martinez-Lopez had ever sought treatment primarily for symptoms of asthma. (Id.). Because the ALJ determined that there was nothing to support a finding "that the claimant has asthma symptoms that are of such duration or intensity to interfere with her ability to perform work activities[,]" he found that her asthma was "non-severe." (Id.). The plaintiff has pointed to no evidence, and has presented no arguments, which would support an alternative conclusion.

With respect to the plaintiff's complaints of arthritis and obesity, the ALJ found, based on his review of the medical records, that the only time Martinez-Lopez suffered symptoms or limitations from these impairments, which could not be controlled with medicine, was when she was pregnant. (Dec. 7; Tr. 20). Under the Social Security regulations, an impairment is only considered severe at step two if it is expected to result in death or if it has lasted, or is expected to last, for a continuous period of at least 12 months. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Because the ALJ determined that the plaintiff's arthritis and obesity were only severe during pregnancy, he determined that they did not satisfy the duration requirement, and thus were "non-severe" for purposes of the disability analysis. (Dec. 3, 7; Tr. 16, 20). This court concludes that these findings were supported by substantial evidence.

As the ALJ noted in his written decision, the plaintiff first presented with arthritis-like symptoms in October 2003, when she was admitted to the hospital after complaining

of pain in her left shoulder, knees and neck.  (Dec. 6; Tr. 19; <u>see</u> <u>also</u> Tr. 124-25).

Martinez-Lopez was seen in consultation with a rheumatologist, who believed that she

was experiencing a reactive process to a virus or chlamydia.  (Tr. 125).  She was

diagnosed with polyarthralgia, possibly reactive, and was started on naproxen and

doxycycline.  (Tr. 124-25).  As a result of the treatment, Martinez-Lopez felt better and

was discharged home.  (Tr. 125).

The plaintiff complained of joint pain again in March 2004.  (<u>See</u> Tr. 447, 449,

459).  She was given a medrol dose pack and MTX, which improved her symptoms.  (Tr.

447, 449).  However, Martinez-Lopez did not refill her prescription and failed to appear

for a follow up appointment.  (<u>Id.</u>).  Subsequently, on November 16, 2004, Martinez-

Lopez met with Deborah Saudek Collier, M.D., a rheumatologist.  (Tr. 449).  The

plaintiff reported pain and swelling in her knees and right wrist, as well as morning

stiffness in her knees, wrists, and metacarpophalangeal joints.  (<u>Id.</u>).  Upon examination,

Dr. Collier found point tenderness in the plaintiff's right wrist and right knee effusion

with no warmth and mild pain with flexion.  (<u>Id.</u>).  However, the examination was

otherwise normal.  (Tr. 449-51).  Dr. Collier diagnosed Martinez-Lopez with inflam-

matory polyarthritis, RF negative, but could not determine whether it was seronegative

rheumatoid arthritis or reactive arthritis due to chlamydia.  (Tr. 451).  She noted that if it

were reactive arthritis, the condition should resolve over time.  (<u>Id.</u>).

Martinez-Lopez met with Dr. Collier again in April 2005, and reported only mild,

occasional pain in her knees.  (Tr. 447).  Dr. Collier found that the plaintiff's symptoms

had improved significantly with the use of only naprosyn, and that her inflammatory arthritis appeared to be resolving on its own.  (Id.).  She continued to prescribe naprosyn and encouraged the plaintiff to exercise and follow a healthy diet.  (Id.).  Dr. Collier also determined that there was no need to schedule another appointment unless further issues arose or the plaintiff's arthritis returned in the future.  (Id.).

As the ALJ found and the record shows, Martinez-Lopez next complained of joint pain in November 2005, when she was nearly 27 weeks pregnant.  (See Dec. 7; Tr. 20, 413).  Thus, on November 28, 2005, she reported lower back pain, which radiated down her legs and made it difficult to walk, as well as a burning sensation in her left calf.  (Tr. 413).  The plaintiff had experienced a significant weight gain, and was over 200 pounds.  (Dec. 7; Tr. 20, 416).  She was counseled about her weight and the physiological changes of pregnancy, and was encouraged to take Tylenol, apply warmth to her back, massage the affected area, and wear a maternity support belt.  (Tr. 413).

In February 2006, when she was over 38 weeks pregnant, Martinez-Lopez reported that she was experiencing back and knee pain, which was exacerbated by her continued weight gain.  (Tr. 378).  She also reported that she was having trouble sleeping and felt exhausted.  (Id.).  The plaintiff met with a midwife, who provided reassurance with respect to her pregnancy.  (Id.).

The record demonstrates that Martinez-Lopez was able to perform work as a gate agent from 2007 to late April 2009, despite her physical impairments.  (See Tr. 97).  Additionally, the evidence shows that she did not seek further treatment for joint pain

until 2011, when she was pregnant with her fourth child.  (See Tr. 97, 667).  Thus, on

May 6, 2011, Martinez-Lopez was admitted to Massachusetts General Hospital ("MGH")

after arriving at the emergency room with complaints of back pain, left-sided abdominal

pain, joint pain, and swelling.  (See Tr. 667-72).  She was diagnosed with a possible

pelvic inflammatory disease, and placed on antibiotics.  (Tr. 661).  Although there was no

clear relationship between the symptoms that resulted in her hospitalization and her

history of arthritis, she was treated in consultation with a rheumatologist, who started her

on a prednisone taper.  (Tr. 661, 665).  The plaintiff was discharged from the hospital on

May 10, 2011, and on May 16, 2011, during an appointment with her gynecologist, the

plaintiff reported that she felt "way better" and that her pain was under control.  (Tr.

661).

Subsequently, on June 17, 2011, Martinez-Lopez met with Luis Arias-Urdaneta,

M.D., a rheumatologist at MGH.  (Dec. 4; Tr. 17, 761-63).  During the appointment, the

plaintiff informed Dr. Arias-Urdaneta that she had stopped taking ibuprofen, which she

had been taking to control joint pain, after discovering that she had become pregnant.

(Tr. 760).  As a result, she experienced worsening pain and intermittent swelling in her

joints, as well as peripheral morning stiffness lasting approximately 30-45 minutes.  (Id.).

Dr. Arias-Urdaneta examined the plaintiff and found tenderness to palpation in a few of

the plaintiff's metacarpophalangeal joints, as well as in her proximal interphalangeal

joints, left wrist, knees, ankles and left hip.  (Tr. 761).  He also determined that Martinez-

Lopez had a full range of motion in her lumbosacral spine, full muscle strength in her

-15-

extremities, no sensory deficits, normal gait, and intact reflexes. (Id.). Dr. Arias-Urdaneta advised the plaintiff that her treatment options were limited due to her pregnancy. (Tr. 762). However, with her obstetrician's consent, she was placed on 5 mg per day of prednisone. (Tr. 756).

The medical evidence indicates that Martinez-Lopez had no complaints of joint pain while she remained on the prednisone. (See Tr. 751-57). It also indicates that she failed to attend her scheduled follow-up appointments with Dr. Arias-Urdaneta. (Tr. 742, 748). Thus, the record supports the ALJ's finding that Martinez-Lopez's physical impairments could be controlled with medication, and only became severe when she was pregnant and stopped taking her medicine.[2]

The plaintiff argues that "[a] condition that requires medication as strong as prednisone cannot be considered mild or minimal." (Pl. Mem. at 15). This argument is insufficient to undermine the ALJ's decision. As an initial matter, the record shows that

---

[2] In her Reply Memorandum, the plaintiff argues that "[t]he ALJ's finding that Ms. Martinez-Lopez's arthritis was only a severe impairment while she was pregnant amounts to an impermissible hunch or lay opinion by the ALJ[,]" and that the ALJ should have sought additional evidence to determine whether her arthritis would resolve following the delivery of her baby. (Pl. Reply Mem. at 4). However, "[a]t Step 2, the claimant has the burden of proving, through objective medical evidence, that her impairments are severe." Teves v. McMahon, 472 F. Supp. 2d 82, 86 (D. Mass. 2007). As described above, the objective medical evidence supports the ALJ's determination that Martinez-Lopez's arthritis was only severe when she was pregnant, and that it was otherwise controlled with medication. To the extent the plaintiff believed that additional evidence was necessary, her counsel was free to pursue it. See Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (Table), 1998 WL 1085810, at *1 (1st Cir. Oct. 2, 1998) (per curiam) (where claimant is represented, the ALJ is "entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored" (quotations and citations omitted)).

prior to her admission to the hospital in May 2011, the plaintiff's arthritis had been controlled for years with anti-inflammatory medication such as naprosyn or ibuprofen. (See Tr. 760). It also shows that the plaintiff stopped taking ibuprofen, and required treatment with prednisone, only after discovering that she had become pregnant. (Tr. 756, 760). There is no evidence to suggest that such a change in treatment would have been necessary if the plaintiff's treatment options had not been limited by her pregnancy. Accordingly, the record indicates that the prednisone was nothing more than a temporary alternative to the use of anti-inflammatory medications.

In any event, "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) (quotations and citations omitted). See also 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled"). Because the medical evidence shows that the plaintiff's arthritis could be controlled with medication, she has not established that it interfered more than minimally with her ability to perform work.

The plaintiff also argues that "[b]y December 2011, Ms. Martinez-Lopez's arthritis symptoms had worsened to the point that she required the assistance of a walker and wheelchair, despite restarting prednisone treatments." (Pl. Mem. at 15). Accordingly, she contends that her arthritis must be considered severe. (Id.). Again, the plaintiff's argument is not persuasive. While the medical evidence demonstrates that the plaintiff's ability to walk became increasingly compromised during the course of her 2011 preg-

-17-

nancy to the point where she decided to obtain a wheelchair, it does not support the plaintiff's assertion that those difficulties were caused by her arthritis rather than by her pregnancy.

As the ALJ described in his analysis at step two, in late August 2011, when Martinez-Lopez was nearly 20 weeks pregnant, she complained to her obstetrician that she was experiencing low pressure and pelvic pain that was greater on the left than the right. (Dec. 5; Tr. 18, 743-44). The plaintiff was prescribed a maternity belt, and was advised to use Tylenol for pain. (Tr. 743). One month later, during a prenatal visit on September 18, 2011, Martinez-Lopez complained of lower abdominal pain radiating to her back and legs, along with some nausea and vomiting. (Tr. 739). However, the cause of her symptoms remained unclear, and the plaintiff was encouraged to consider physical therapy in order to treat her musculoskeletal discomfort. (Id.).

On October 5, 2011, the plaintiff met with Alissa Evangelista for a physical therapy evaluation. (Tr. 792-94). According to Ms. Evangelista's records, Martinez-Lopez stated that she had been experiencing increasing back, right buttock and pubic pain since the start of her pregnancy. (Tr. 792). She also stated that she had been wearing a maternity belt, but that it had not given her any relief. (Id.). In addition, the plaintiff stated that she had a history of chronic back pain as a result of a car accident and a fall at work in 2008. (Id.). Upon examination, Ms. Evangelista determined that the plaintiff's presentation was consistent with sacroiliac joint dysfunction ("SIJ") and pelvic hypermobility, which was limiting her level of function. (Tr. 793). She also indicated

that she expected Martinez-Lopez to benefit from physical therapy, and that she antici-

pated a good resolution of the plaintiff's symptoms.  (Id.).

The plaintiff met with Ms. Evangelista again on October 31, 2011, and reported

that she had been experiencing terrible pain in her hips and lower back.  (Tr. 782).  Ms.

Evangelista noted that Martinez-Lopez "continues to present with SIJ and pubic insuffi-

ciency due to pregnancy, position of fetus and pre-existing chronic back pain."  (Id.).  She

further indicated that the plaintiff would benefit from wearing an SIJ belt and using a

walker.  (Id.).  However, she did not indicate that the plaintiff's pain or need for a walker

was related to her history of arthritis.  (See id.).

During another physical therapy session on November 10, 2011, Ms. Evangelista

noted that the plaintiff was continuing to have a high level of pain, as well as difficulty

with her mobility.  (Tr. 777).  She also noted that Martinez-Lopez was experiencing pain

in her pubic symphysis while sitting.  (Id.).  Ms. Evangelista determined that the plaintiff

would benefit from exercising at home, but did not require further physical therapy at that

time.  (Id.).

On December 1, 2011, when Martinez-Lopez  was in her 33rd week of pregnancy,

she met with Allison Bailey, M.D. after complaining of severe bilateral groin and anterior

pelvic pain that was interfering with her ability to walk.  (Tr. 772).  Dr. Bailey noted that

the plaintiff had been experiencing pain in the pubic symphysis area since early on in her

pregnancy, and had also experienced worsening knee pain after she stopped taking anti-

inflammatory medication.  (Id.).  Following an examination, Dr. Bailey determined that

Martinez-Lopez was likely suffering from an intra-articular hip disorder in the setting of pelvic girdle pain and instability of pregnancy, as well as knee pain due to arthritis. (Id.). She recommended the use of a short-acting opioid analgesic to control the plaintiff's pain. (Id.).

Subsequently, on December 7, 2011, the plaintiff met with her obstetrician for a pre-natal appointment. (Tr. 771). Martinez-Lopez reported that she continued to suffer from pubic pain and pressure, but that it became tolerable with the use of prednisone and dilaudid. (Id.). She also stated that she was resting more, and would be picking up a wheelchair later that day. (Id.). However, there is no evidence that the plaintiff's condition was caused by her physical impairments rather than complications from her pregnancy, or that she would have experienced any such symptoms in the absence of pregnancy. Moreover, the plaintiff's assertion that her physical impairments were "severe" within the meaning of the Social Security regulations is undermined by the fact that the alleged onset of her disability did not occur until nearly five years after she was first diagnosed with arthritis in November 2004, and by the fact that she was able to remain employed until April 2009, well after her diagnosis. (See Tr. 96-97, 451). Accordingly, there is no merit to the plaintiff's assertion that the ALJ failed to adhere to the applicable standard or that he erred by finding that her physical impairments only became severe during pregnancy.

**Reliance on Dr. Brown's Opinion**

The plaintiff also attributes error to the ALJ's reliance on the opinion of Dr. Brown. (See Pl. Mem. at 14-16; Pl. Reply Mem. at 2-3). On August 10, 2010, Dr. Brown, a State agency physician, reviewed the available medical records and opined that Martinez-Lopez was "physically not severe." (Tr. 540). The ALJ explained that he had given weight to Dr. Brown's assessment, and reasoned that "[n]o treating source has identified greater physical limitation." (Dec. 7; Tr. 20). The plaintiff contends that this was improper because Dr. Brown's assessment reflected a misreading or misunder-standing of the evidence regarding Martinez-Lopez's arthritis. (Pl. Mem. at 14; Pl. Reply Mem. at 2). While this court agrees that Dr. Brown's opinion is problematic in that he failed to properly consider evidence related to plaintiff's arthritis, this court finds that no remand is warranted on this basis.

In rendering his opinion that the plaintiff's physical impairments were not severe, Dr. Brown considered the plaintiff's claim of worsening back and knee pain resulting from her obesity. (Tr. 540). After reviewing the medical evidence, Dr. Brown found that Martinez-Lopez had a body mass index of 37.5 kg/m, and that her physical examinations showed musculoskeletal strain in the L/S area. (Id.). However, Dr. Brown also noted that the plaintiff's spine was well aligned, with minimal degenerative changes, and that her knees did not exhibit any laxity. (Id.). In addition, Dr. Brown found it significant that Martinez-Lopez was able to engage in various activities of daily living, including but not limited to, caring for her children, cooking, driving and caring for a dog. (Id.).

Dr. Brown recognized that Martinez-Lopez was also claiming disability based on symptoms of arthritis. (Id.). Significantly, however, Dr. Brown determined that "[a]rthritis is not mentioned in the [medical evidence of record], nor is [there] objective evidence of the disorder." (Id.). As described above, the record substantiates a history of arthritis and polyarthralgia dating back as early as 2003. Therefore, Dr. Brown's assessment conflicts with the objective medical evidence.

Notwithstanding Dr. Brown's failure to recognize the evidence of arthritis, this court finds that the ALJ did not commit reversible error by giving some weight to Dr. Brown's opinion. As described above, Dr. Brown did consider the plaintiff's claims of disabling back and knee pain even though Dr. Brown did not attribute those symptoms to arthritis. (See Tr. 540). However, Dr. Brown found that the plaintiff's alleged limitations were inconsistent with x-rays of her spine and physical examinations of her knee, as well as with her ability to perform various activities of daily living. (Id.). Moreover, as the ALJ found, none of Martinez-Lopez's treating physicians suggested that the plaintiff's physical impairments would interfere with her ability to work. Therefore, Dr. Brown's opinion provides some support for the ALJ's conclusion that those impairments were not severe.

More importantly, while the ALJ explained that he had given "weight" to Dr. Brown's opinion, he emphasized that his conclusions were based on a review of "[t]he medical evidence as a whole[.]" (Dec. 7; Tr. 20). As discussed supra, that evidence supports the ALJ's finding at step two of the sequential analysis. Therefore, even

assuming, arguendo, that the ALJ committed error by crediting Dr. Brown's opinion, any such error was harmless and does not warrant a remand.[3]  See Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 656 (1st Cir. 2000) (ruling that "remand is not essential if it will amount to no more than an empty exercise").

## C.    The ALJ's Treatment of the Opinion Evidence

The plaintiff's next challenge concerns the ALJ's handling of the available opinion evidence in connection with his finding that Martinez-Lopez retained the mental RFC to understand and remember simple instructions, concentrate on simple tasks for 2-hour periods over an 8-hour workday, interact appropriately with co-workers and supervisors, and adapt to changes in the work setting, but should avoid work requiring frequent contact with the general public.  In support of this finding, the ALJ gave "great weight" to the assessments of Dr. McKenna, a State agency psychologist, and Dr. Kleinman, a State agency psychiatrist, but rejected the opinions of Dr. Lim, the plaintiff's treating psychiatrist, to the extent those opinions were inconsistent with his assessment of the plaintiff's RFC.  (Dec. 17; Tr. 30).  Martinez-Lopez contends that the ALJ committed error by relying on the outdated opinion of Dr. McKenna, substituting his own assumptions and conclusions for the opinions of Dr. Lim, and crediting some aspects of Dr.

---

[3]  In light of this court's conclusion that there was substantial evidence to support the ALJ's decision at step two of the disability analysis, it is unnecessary to address the Commissioner's argument that any error was harmless because the ALJ resolved this step in the plaintiff's favor in connection with her mental condition and proceeded to consider the combined effects of all of her impairments at steps three and four.  (See Def. Mem. (Docket No. 27) at 14-15).

Lim's assessment while rejecting others.  (Pl. Mem. at 16-19).  For the reasons that follow, this court finds that the ALJ's treatment of the opinion evidence was proper and does not support a ruling in Martinez-Lopez's favor.

## Relevant Opinion Evidence

On March 20, 2010, Dr. McKenna completed a Psychiatric Review Technique form and an assessment of Martinez-Lopez's mental RFC based on a review of the medical evidence through December 17, 2009.  (Tr. 494-511).  Therein, Dr. McKenna found that Martinez-Lopez was suffering from a major depressive disorder (post-partum) with psychotic features in partial remission, and an anxiety disorder with symptoms of panic and generalized anxiety.  (Tr. 496).  Moreover, as the ALJ described in his decision, Dr. McKenna assessed the plaintiff as having mild restrictions in her activities of daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (Dec. 14; Tr. 27; see also Tr. 508).  She further opined that the plaintiff was able to comprehend and recall simple information, complete the same level tasks for 2-hour increments over the course of an 8-hour workday for 5 days per week, adapt to routine changes following a brief period of adjustment, and engage in adequate social interaction, although she could be sensitive to perceived criticism.  (Dec. 14; Tr. 27; see also Tr. 496).  Subsequently, on July 28, 2010, Dr. Kleinman conducted an analysis of the medical records and completed a Case Analysis form in which he affirmed Dr. McKenna's opinions.  (Dec. 15; Tr. 20; see also Tr 539). The ALJ explained that he had

given these opinions "great weight" because they were "consistent with the record as a whole." (Dec. 17; Tr. 30). This court concludes that the ALJ's decision on this matter is entitled to deference.

The ALJ also considered the opinions of Dr. Lim. (Dec. 15; Tr. 28). Thus, as the ALJ described in his written decision, on July 9, 2010, Dr. Lim completed a Psychiatric Disorder questionnaire in which he stated that Martinez-Lopez had been diagnosed with a major depressive disorder with psychotic features, as well as an anxiety disorder, and that she had a current GAF score of 59. (Id.; see also Tr. 535). He also explained that the plaintiff's anxiety had started during the eighth month of her pregnancy, and had worsened after delivery of her baby to the point where she began to show symptoms of depression with auditory and visual hallucinations. (Id.). When asked to describe the plaintiff's current mental status, Dr. Lim stated that Martinez-Lopez appeared clean and well-groomed, was able to maintain direct eye contact, was "[a]lert + oriented x 3," had clear and coherent speech, a full affect, and was able to maintain a direct thought process that occurred at a normal rate. (Id.). He further indicated that she had no delusions or hallucinations, no suicidal or homicidal ideation, and fair/good insight and judgment, but that she suffered from poor sleep and exhibited a labile mood. (Id.).

Dr. Lim opined that Martinez-Lopez had no problems with memory, had the capacity to sustain concentration and attention, required no excessive supervision, was able to get along with others, and would be capable of handling monthly benefits. (Tr. 535-37). However, he indicated that she had a low stress tolerance and experienced

panic attacks on public transportation or in other enclosed and crowded places. (Tr. 536). Furthermore, according to Dr. Lim, Martinez-Lopez had been "unable to work" since her most recent depressive episode "due to fluctuating mood and psychotic [symptoms]." (Tr. 535). He described her prognosis as "Guarded," and stated that she "is currently doing ok but stability is tenuous. She has had an up and down course without significant periods of stability since [her] initial [evaluation] on 8/31/09." (Tr. 537).

The ALJ explained that he had given "less weight" to Dr. Lim's opinions, to the extent they were inconsistent with his finding regarding the plaintiff's RFC, because "[t]he medical evidence as a whole establishes that when the claimant is on medication, she does not have the same level of impairment as she has while off her medications." (Dec. 17; Tr. 30). Thus, although the ALJ stated that he had given "some weight" to Dr. Lim's treatment notes, "which consistently show improvement in [Martinez-Lopez's] symptoms when she is compliant with treatment and medication," and had also given "some weight to Dr. Lim's "assessment . . . of a current GAF of 59, which indicates a moderate level of limitation[,]" the ALJ rejected Dr. Lim's opinion that the plaintiff's stability was tenuous because "[t]he evidence indicates that the claimant was stable if she complied with medication, and the only thing making her stability 'tenuous' was her continuing noncompliance." (Id.). For the reasons described below, this court finds that there is substantial support for these conclusions.

## Plaintiff's Challenge to the ALJ's Decision

The plaintiff first challenges the ALJ's decision to credit Dr. McKenna's assessment of Martinez-Lopez's mental limitations on the grounds that it was based on a partial review of the record. (Pl. Mem. at 18). As the plaintiff argues in support of her position, Dr. McKenna's opinions were based on a review of the medical records through December 17, 2009. (Id.; see also Tr. 510). Consequently, she did not have an opportunity to consider records of the plaintiff's treatment with Dr. Lim on January 28, March 23, April 15, and July 2 of 2010, or to consider the Psychiatric Disorder questionnaire that Dr. Lim completed on July 9, 2010. (Pl. Mem. at 18). The plaintiff contends that Dr. McKenna's failure to consider the additional evidence rendered her assessment outdated, and that the ALJ's reliance on that assessment was improper.

This court finds that the ALJ's decision to credit Dr. McKenna's assessment was reasonable. As an initial matter, the record demonstrates that Dr. Kleinman had an opportunity to review all of Dr. Lim's records and opinions before completing his Case Analysis form on July 28, 2010. (See Tr. 539). Dr. Kleinman expressly affirmed the opinions expressed by Dr. McKenna in her March 20, 2010 Psychiatric Review Technique form and mental RFC assessment. (Id.). Thus, the plaintiff's assertion that Dr. McKenna's opinions were unreliable because they were outdated is belied by evidence in the record.

In any event, the fact that a State agency consultant "did not have access to all of the records . . . does not prevent the ALJ from assigning significant weight to [her] assessment if the ALJ conducted an independent review of the evidence, which included

-27-

treatment notes the consultant had not considered."  Carter v. Astrue, 886 F. Supp. 2d

1093, 1112 (N.D. Iowa 2012).  See also Thacker v. Astrue, Civil No. 3:11CV246-GCM-

DSC, 2011 WL 7154218, at *6 (W.D.N.C. Nov. 28, 2011) ("The fact that the state

agency physician did not have access to the entire evidentiary record – because the record

was incomplete a[t] the time of the assessment – is inconsequential as the ALJ considered

the entire evidentiary record and substantial evidence supports his determination"),

adopted by 2011 WL 380052, at *1 (W.D.N.C. Feb. 6, 2012).  In the instant case, the

ALJ specifically considered Dr. Lim's treatment notes from each of the dates at issue, and

reviewed the opinions expressed by Dr. Lim in his July 9, 2010 Psychiatric Disorder

questionnaire.  (See Dec. 13-15; Tr. 26-28).  Indeed, the ALJ specifically relied on Dr.

Lim's 2010 treatment notes to support his determination that the plaintiff was stable when

she remained on her psychiatric medications.  (See Dec. 13-15, 17; Tr. 26-28, 30).

Accordingly, the plaintiff has not shown that there was any error in his decision to afford

significant weight to Dr. McKenna's assessment.

      To the extent Martinez-Lopez suggests that the ALJ erred by failing to adopt Dr.

Lim's opinions, that argument too is unpersuasive.  Under the Social Security regulations,

"the determination of the ultimate question of disability is for [the Commissioner], not for

the doctors or for the courts."  Monroe v. Barnhart, 471 F. Supp. 2d 203, 211 (D. Mass.

2007) (quoting Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir.

1981)) (alteration in original).  Consequently, the opinion of an examining source that a

claimant is disabled from working "[is] not given special significance by mere virtue of

the existence of a treating relationship." <u>Amaral v. Comm'r of Soc. Sec.</u>, 797 F. Supp. 2d 154, 162 (D. Mass. 2010). Thus, the ALJ had no obligation to credit Dr. Lim's opinion that Martinez-Lopez's fluctuating mood and psychotic symptoms rendered her incapable of working.

This court also finds that it was appropriate for the ALJ to reject Dr. Lim's opinion that the plaintiff's stability was "tenuous." "The law in this circuit does not require the ALJ to give greater weight to the opinions of treating physicians." <u>Arruda v. Barnhart</u>, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (quoting <u>Arroyo v. Sec'y of Health & Human Servs.</u>, 932 F.2d 82, 89 (1st Cir. 1991)). Rather, the ALJ is entitled to "downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where . . . it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and nonexamining physicians." <u>Id.</u> Here, the ALJ found that Dr. Lim's assessment did not account for the plaintiff's repeated failures to remain on her prescribed medications or otherwise comply with her treatment. (<u>See</u> Dec. 17; Tr. 30). He also found that the medical records, including Dr. Lim's own treatment notes, indicated "that the claimant was stable if she complied with medication, and the only thing making her stability 'tenuous' was her continuing noncompliance." (Dec. 17; Tr. 30). As detailed in the ALJ's decision, the record contains substantial support for this conclusion. (<u>See</u> Dec. 10-18; Tr. 23-31; <u>see also</u> Tr. 206-08, 215-16, 221, 226, 233, 591-92, 605, 615, 617, 619, 683, 693, 720, 722, 756).

The plaintiff nevertheless contends that the ALJ's decision in this regard was inconsistent with evidence "that indicates that Ms. Martinez-Lopez continued to suffer from her mental conditions despite taking medication, or even improved at times without it[.]" (Pl. Mem. at 18). However, the medical records cited by the plaintiff in support of this argument do nothing to undermine the ALJ's decision. Those records indicate that the plaintiff experienced confusion, irritability and hallucinations after missing her last few appointments with Dr. Lim and skipping doses of seroquel, which she was taking to treat her psychosis. (Tr. 229-30). They also show that she was "doing well in regard to mood and anxiety" after remaining on a higher dose of zoloft for approximately two weeks. (Tr. 210). Accordingly, the plaintiff's argument that her mental condition was not controllable with mediation lacks merit.

The plaintiff also contends that the ALJ committed reversible error by substituting his own opinion for Dr. Lim's opinion that Martinez-Lopez was unable to remain stable. (Pl. Mem. at 18-19). This argument is also unconvincing. As described in his decision, the ALJ conducted a detailed review of the evidence relating to the plaintiff's mental health and cited various records, including Dr. Lim's own treatment notes, showing significant improvement in the plaintiff's mental health symptoms when she complied with her treatment. (See Dec. 10-17; Tr. 23-30). He also relied on the opinions of the State agency physicians regarding the extent of the plaintiff's mental limitations, as well as Dr. Lim's July 9, 2010 assessment that Martinez-Lopez was able to sustain concentration and attention, had no trouble with her memory, was able to get along with others,

and had a GAF score of 59, "which indicates a moderate level of limitation." (Dec. 17; Tr. 30). In short, the ALJ relied on evidence in the record rather than his own assumptions and opinions to conclude that the plaintiff remained capable of performing a limited range of work at all of the relevant exertional levels.

Finally, the plaintiff argues that the ALJ improperly "credited Dr. Lim's opinion piecemeal" by accepting those portions of Dr. Lim's opinion which supported his own conclusions, but rejecting Dr. Lim's opinion to the extent it was inconsistent with his assessment of the plaintiff's RFC. (See Pl. Mem. at 18-19; Pl. Reply Mem. at 5-8). Again, her argument is unavailing. In Social Security cases, the "resolution of . . . conflicts is the province of the Commissioner" and "[t]he hearing officer is entitled 'to piece together the relevant medical facts from the findings and opinions of multiple physicians.'" Lacroix v. Barnhart, 352 F. Supp. 2d 100, 112 (D. Mass. 2005) (quoting Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987)). In this case, as detailed above, the ALJ considered all of Dr. Lim's findings and gave them weight to the extent they were consistent with the medical evidence as a whole. Therefore, his decision to deny the plaintiff's claim for benefits was appropriate and must be upheld.

## IV.  CONCLUSION

For all the reasons detailed herein, the "Plaintiff's Motion for Order Reversing the Commissioner's Decision" (Docket No. 13) is DENIED, and the "Defendant's Motion to Affirm the Commissioner's Decision" (Docket No. 26) is ALLOWED.

_____/ s / Judith Gail Dein_____
Judith Gail Dein
U.S. Magistrate Judge